Cristina Galeas CASTANEDA, Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 93–9549.

United States Court of Appeals,
Tenth Circuit.

May 13, 1994.

Rehearing Denied Aug. 17, 1994.

Daniel M. Kowalski, Denver, CO, for petitioner.

Frank W. Hunger, Asst. Atty. Gen., Civil Div., Mark C. Walters, Acting Asst. Director, Office of Immigration Litigation, Civil Div., Alison R. Drucker, Atty., Office of Immigration Litigation, Civil Div., Dept. of Justice, Washington, DC, for respondent.

Before BALDOCK and McKAY, Circuit Judges, and BROWN,* District Judge.

WESLEY E. BROWN, District Judge.

Petitioner seeks review of an adverse order issued by the Board of Immigration Appeals, which upheld the decision of an immigration judge (IJ) to deny petitioner's application for asylum or withholding of deportation.[1] Petitioner also requests that, in the event we deny her petition for review, we extend or reinstate the thirty-day privilege of voluntary departure granted by the Board when it affirmed the IJ's determination that she was immediately deportable. For the reasons explained below, we uphold the Board's decision on asylum and withholding of deportation, and deny petitioner's alternative request regarding voluntary departure, without prejudice, for lack of jurisdiction.

### Asylum and Withholding of Deportation

In response to an order to show cause why she should not be deported to her native Honduras pursuant to 8 U.S.C. § 1251(a)(1)(B) (entry without inspection), petitioner applied for asylum from alleged persecution based on (imputed) nationality, social group, and political opinion under 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). Specifically, petitioner alleged that, prior to entering this country, she had been detained for some time by Honduran officials under a misunderstanding that she was a certain Nicaraguan suspected in a bank robbery. After being released with an admonishment that she was still under investigation and was not to leave the city, petitioner fled Honduras and eventually entered this country illegally. To support her request for asylum, petitioner asserted that, if returned to Honduras, she would be subject to false criminal prosecution to cover up the official error allegedly underlying her arrest.

At her initial hearing, petitioner conceded deportability as charged, renewed her appli-

---

* Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

cation for asylum, and added alternative requests for withholding of deportation, *see* 8 U.S.C. § 1253(h), and voluntary departure, *see* 8 U.S.C. § 1254(e). Following a subsequent evidentiary hearing, the IJ found that whatever adverse legal action, if any, petitioner faced in Honduras was based not on the statutory considerations of nationality, social group, or political opinion (real or imputed), but on her status as a bank robbery suspect. The IJ concluded that "[t]here is nothing in the asylum statute that protects a person who is falsely accused of a crime," R. at 25 and, accordingly, denied all requested relief except voluntary departure, *id.* at 26. The Board agreed with the IJ's determination, and extended petitioner's voluntary departure date thirty days from the date of its order.

■ The controlling considerations and standards governing our review in this proceeding, set out at some length in *Kapcia v. INS*, 944 F.2d 702, 706–07 (10th Cir.1991), were recently summarized and reaffirmed in *Nguyen v. INS*, 991 F.2d 621 (10th Cir.1993):

> The [Immigration and Nationality] Act establishes a two-part test for determining whether a deportable alien is statutorily eligible for asylum. Step one requires the alien to show that he or she is a refugee by proving either past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Step two allows that once the alien has established statutory eligibility as a refugee, the Attorney General may apply his discretion in granting asylum. We apply the substantial evidence standard to a review of the Board's factual determination of whether an alien is a refugee, and an abuse of discretion standard to the Attorney General's decision of whether to grant asylum.

*Id.* at 625 (citations and quotations omitted). If the petitioner fails to satisfy her factual burden at step one regarding past or anticipated persecution, the inquiry is over and the court need not address the discretionary refusal of asylum from the alleged persecution at step two. *Id.* at 625–26.

■ We have carefully considered the pertinent portions of the record, particularly petitioner's affidavit and hearing testimony. Substantial evidence therein supports the IJ's finding that petitioner was detained solely on the basis of her suspected participation in a bank robbery, to which her mistaken identification as a Nicaraguan was only incidental. In short, petitioner's own testimony indicates she was arrested because of the imputation of criminal activity, not Nicaraguan nationality. We further agree with the IJ's conclusion that such criminal prosecution—at least without a concomitant threat of brutal or discriminatory treatment itself based on statutorily significant characteristics, which has not been shown on our record—does not constitute "persecution" under § 1101(a)(42)(A). *See Kapcia*, 944 F.2d at 708 ("conviction and fine for . . . illegal [activity] is a legitimate government act and not persecution as contemplated by the Act"). With that determination, the IJ properly denied asylum at step one of the inquiry.

■ That determination is fatal as well to petitioner's application for withholding of deportation. To obtain such relief, "the burden is on the alien to establish a 'clear probability of persecution.'" *Nguyen*, 991 F.2d at 626 (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (1987)). "It goes without saying that the well-founded fear test [for asylum] is easier to establish. Therefore, because petitioner failed to meet the threshold burden of establishing statutory eligibility for the grant of asylum, it is clear that [s]he did not meet the tougher standard required for withholding of deportation." *Id.* at 626 (citation omitted); *accord Ravindran v. INS*, 976 F.2d 754, 762 (1st Cir.1992).

### *Voluntary Departure*

■ Petitioner notes that the thirty-day period allowed by the Board for her voluntary departure has long since expired and asks this court to extend or reinstate that privilege. Respondent Immigration and Naturalization Service (INS) objects to this request, arguing that the pertinent statutory and regulatory provisions vest authority to grant such discretionary relief solely in the

Attorney General and her delegate, the district director.

As INS emphasizes, it is only the Attorney General who

> may, in h[er] discretion, permit any alien under deportation proceedings ... to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection.

8 U.S.C. § 1254(e); *see also* 8 U.S.C. § 1252(b) (providing Attorney General discretionary authority to obviate deportation proceedings altogether by permitting voluntary departure of alien who admits deportability at outset). While, pursuant to 8 U.S.C. § 1103(a), the Attorney General has delegated her authority to grant voluntary departure in the first instance to various INS officers, *see* 8 C.F.R. §§ 242.5(a)(1), 244.1, "[a]uthority to *reinstate or extend* the time within which to depart voluntarily specified initially by an immigration judge or the Board is within the *sole jurisdiction of the district director*," 8 C.F.R. § 244.2 (emphasis added). There is no administrative appeal from the district director's decision. *Id.*

Of course, these provisions do not, in themselves, delimit this court's jurisdiction in the matter. Our authority in deportation proceedings derives from 8 U.S.C. § 1105a. That section, in conjunction with the more general jurisdictional provisions in chapter 158 of Title 28, specifically vests authority to review "all final orders of deportation" in the circuit courts of appeal, which have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity [there]of." 8 U.S.C. § 1105a(a); 28 U.S.C. § 2342. The Supreme Court has made it clear that this authority includes the power to review "all determinations made *during and incident to the administrative proceeding* ..., such as orders denying voluntary departure pursuant to [§ 1254(e)]." *Foti v. INS,* 375 U.S. 217, 229, 84 S.Ct. 306,

314, 11 L.Ed.2d 281 (1963) (emphasis added). We underscore the qualification included in the *Foti* formulation, because § 1105a(a) embraces "only those determinations made during a [deportation] proceeding conducted under [§ 1252(b)]". *Cheng Fan Kwok v. INS,* 392 U.S. 206, 216, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968).

In accordance with these principles, this court has reviewed voluntary departure decisions of the Board that were (1) made during deportation proceedings and (2) issued in association with final deportation orders brought before this court pursuant to § 1105a(a). *See, e.g., Rivera–Zurita v. INS,* 946 F.2d 118, 120 (10th Cir.1991); *Becerra–Jimenez v. INS,* 829 F.2d 996, 997–98 (10th Cir.1987). By the same token, however, we have denied review of a district director's post-proceeding refusal to suspend deportation, rejecting the argument that a subsequent denial of discretionary relief is somehow "ancillary" to a previous, final order of deportation. *See Romero–Carmona v. United States Dep't of Justice, INS,* 725 F.2d 104, 105–06 (10th Cir.1984). Other circuits have applied the same principles to deny § 1105a(a) review with respect to the district director's decision regarding extension of voluntary departure. *See, e.g., Lad v. INS,* 539 F.2d 808, 809 (1st Cir.1976); *Bolanos v. Kiley,* 509 F.2d 1023, 1025 (2d Cir.1975).

 This does not mean that the district director's decisions are completely insulated from judicial scrutiny. "In situations to which the provisions of [§ 1105a(a)] are inapplicable, the alien's remedies would, of course, ordinarily lie first in an action brought in an appropriate district court." *Cheng,* 392 U.S. at 210, 88 S.Ct. at 1973. Thus, many courts have recognized that the district director's refusal to extend voluntary departure is reviewable in the district court pursuant to, among other provisions, the general jurisdictional grant set out in 8 U.S.C. § 1329 ("The district courts ... shall have jurisdiction of all causes ... arising under any of the provisions of this subchapter [i.e., 8 U.S.C. §§ 1151–1362]").[2] *See, e.g.,*

**2.** We note there is no inconsistency between the regulatory proscription against administrative

appeals in 8 C.F.R. § 244.2 and the availability of judicial review in the district courts pursuant

*Williams v. INS,* 795 F.2d 738, 745 (9th Cir.1986); *Lad,* 539 F.2d at 809 n. 4; *Bolanos,* 509 F.2d at 1025; *Akbari v. Godshall,* 524 F.Supp. 635, 638, 643–45 (D.Colo.1981); *cf. Salehi v. District Director, INS,* 796 F.2d 1286, 1289, 1291–92 (10th Cir.1986) (recognizing district court's § 1329 jurisdiction over district director's denial of stay, which was not reviewable in court of appeals under § 1105a(a)).

The immediate concern here, however, is not our jurisdiction to review the administrative extension of voluntary departure, but our power to bestow such relief in the first instance—i.e., petitioner asks us to extend or reinstate her voluntary departure period, not to review any decision on the matter rendered in her deportation proceeding. *See* Petitioner's Opening Brief at 15–16. On this critical point, none of the pertinent statutes discussed above provide any basis whatsoever for this court to assume authority for affording the discretionary, administrative relief sought by petitioner. Apposite here are the following cogent observations of a fellow panel concerning the intrinsically circumscribed character of federal judicial power:

> [F]ederal courts are tribunals of limited jurisdiction with only those powers conferred by Congress. Thus, while the heart of judicial authority is article III of the Constitution, the lifeblood of the [federal] court[s] is the contents of the Judicial Code. If an act can be performed by a [federal] court, it is because it was permitted and not because it was not prohibited by Congress. Federal courts operate only in the presence rather than the absence of statutory authority.

*Wyeth Lab. v. United States Dist. Court,* 851 F.2d 321, 324 (10th Cir.1988) (citations omitted); *see Finley v. United States,* 490 U.S. 545, 548, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989) ("two things are necessary to create [federal court] jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it* . . . . To the extent that such action is not taken, the power lies dormant." (quotation omitted)). Accordingly, we are constrained to hold that we lack jurisdiction to consider petitioner's request for extension or reinstatement of voluntary departure.

We recognize that the issue we decide today has generated a fair amount of disagreement in our sister circuits. While some courts have expressed views somewhat like our own, *see Kaczmarczyk v. INS,* 933 F.2d 588, 598 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991); *see also Alsheweikh v. INS,* 990 F.2d 1025, 1028 (8th Cir.1993) ("We ... decline to consider [petitioner's] application for reinstatement of time voluntarily to depart. [Petitioner] may request this relief from the INS."), others have adopted various contrary positions. At least one has expressly left the issue undecided. *See Farzad v. INS,* 808 F.2d 1071, 1072 (5th Cir.1987).

The most extreme position is espoused by the Ninth Circuit, which holds that once voluntary departure is granted by the Board, that privilege automatically "remains in effect throughout the period of [judicial] review and for whatever additional period the [Board] afforded the alien in the order under review." *Contreras-Aragon v. INS,* 852 F.2d 1088, 1092 (9th Cir.1988) (en banc). So long as the Board's decision is affirmed with-

---

to § 1329. It is Congress that "has the constitutional authority to define the jurisdiction of the lower federal courts, and, once the lines are drawn, limits upon federal jurisdiction ... must be neither disregarded nor evaded." *Keene Corp. v. United States,* —— U.S. ——, ——, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) (citations and quotation omitted); *see United Gas Pipe Line Co. v. Whitman,* 595 F.2d 323, 330 (5th Cir.1979) (only Congress may retract or expand the limits of federal judicial power). Thus, administrative agencies cannot by promulgation or interpretation of their own regulations either augment or nullify the jurisdiction of the federal courts as

delimited by Congress. *See, e.g., United States v. Ursillo,* 786 F.2d 66, 72 (2d Cir.1986); *Trent Coal, Inc. v. Day,* 739 F.2d 116, 118 (3d Cir. 1984). Consequently, § 244.2 is properly understood as prohibiting only administrative review, creating no conflict with the district court's exercise of its jurisdiction under § 1329. *Cf. Salehi v. District Director, INS,* 796 F.2d 1286, 1292 (10th Cir.1986) (recognizing district court's jurisdiction under § 1329 to review district director's denial of stay of deportation despite regulatory prohibition on administrative appeal from that decision under 8 C.F.R. § 243.4).

out qualification, the voluntary departure period provided therein runs from the date the court issues its mandate. *Id.* at 1092, 1097. Several years before *Contreras–Aragon* was decided, the Second Circuit took a somewhat similar approach in *Ballenilla–Gonzalez v. INS*, 546 F.2d 515, 521–22 (2d Cir.1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 75 (1977), though it refused to extend the petitioner's voluntary departure period "as a matter of right" because her appeal was frivolous. *See also Contreras–Aragon*, 852 F.2d at 1095 & n. 3 (comparing approaches of Ninth and Second Circuits).

A more moderate position has been advanced by the First Circuit and elaborated by the Fourth Circuit. These courts also retain some authority over the reinstatement or extension of voluntary departure, but acknowledge "that the decision to reinstate or extend voluntary departures should usually be left to the discretion of the District Director, who is better suited to consider the factual prerequisites."[3] *Ramsay v. INS*, 14 F.3d 206, 213 (4th Cir.1994). Moreover, they are concerned that under the Ninth Circuit's automatic approach, "a court might reinstate voluntary departure even though, in the interim period between the [Board's] and court of appeals' decisions, the alien may have committed acts which would preclude him from eligibility." *Id.* Accordingly, the First and Fourth Circuits hold that a court of appeals may reinstate voluntary departure, but only when "(1) the INS is wielding its discretion to withhold voluntary departure to deter applicants from seeking judicial review of [Board] decisions, *or* (2) the [INS] does *not* suggest it will present the district director with any other reason for refusing the reinstatement." *Id.* (quotations omitted); *see Umanzor–Alvarado v. INS*, 896 F.2d 14, 16 (1st Cir.1990).

The alternative conditions for appellate court relief incorporated in this last approach reflect the two primary concerns motivating all of the courts that have assumed authority to extend or reinstate voluntary departure—access to appellate review, and judicial/administrative economy. Regarding the first, many courts have been troubled by the fact that, because the usual thirty-day departure period permitted by the Board obviously cannot cover the time expended by a petition for review, voluntary departure is, in effect, conditioned on a waiver of judicial review with respect to the underlying deportation order. In short, the alien may elect to depart voluntarily, thus abandoning any opportunity to overturn the deportation order, *see* 8 U.S.C. § 1105a(c) ("An order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order."); *Saadi v. INS*, 912 F.2d 428, 428 (10th Cir. 1990), or choose to challenge the order and thereby forego the benefits of voluntary departure.[4]

Two considerations allay any concern we might have in this regard. First of all, the grant of voluntary departure in lieu of deportation by a particular date does not, in and of itself, "exact a price for the taking of an appeal," as the Ninth Circuit suggests in *Contreras–Aragon*, 852 F.2d at 1094. An alien ordered deported does not *lose* something when offered the additional opportunity to depart voluntarily. On the contrary, he retains precisely the same right to judicial review he would otherwise have had; it is only that his alternative to continued litigation has been made more attractive. How this is fundamentally any different than the enticements offered to criminal defendants under the long-approved practice of plea bargaining escapes us. Indeed, the Ninth Circuit itself notes this obvious analogy, but

---

3. These prerequisites are: "(a) the alien 'is, and has been a person of good moral character for at least five years immediately preceding [the] application ...'; (b) the alien has not been convicted of an aggravated felony; and (c) the alien 'is willing and has the immediate means with which to depart promptly from the United States.' " *Ramsay v. INS*, 14 F.3d 206, 211 (4th Cir.1994) (quoting 8 U.S.C. § 1254(e)(1), 8 C.F.R. § 244.1).

4. These courts emphasize that the discretionary award of voluntary departure carries with it significant consequences beyond a slightly extended stay in the United States. "For example, it enables the alien to evade the stigma of deportation and permits the alien to choose his destination. Most importantly, the grant of voluntary departure facilitates the possibility of return to the United States." *Ramsay*, 14 F.3d at 211–12 (quotation omitted).

considers it applicable only to offers of voluntary departure before initiation of deportation proceedings, under 8 U.S.C. § 1252(b), not to offers of voluntary departure at the conclusion of the proceedings, under § 1254(e). *Id.* We fail to see how the latter choice, in which the alien avoids the consequences of an adverse determination (as opposed to merely the possibility thereof) and waives only the final stage of deferential review (as opposed to the entire administrative and judicial process), involves due process concerns that are not raised by the former. *See also id.* at 1103–04 (Kozinski, J., dissenting).

Second, and in any event, nothing prevents an alien who pursues judicial review from subsequently seeking an additional voluntary departure period from the district director. And, as we have noted, the district director's decision on the matter is subject to review in the district court. Thus, even if the worst fears expressed by some of our sister circuits are realized and the district director denies relief in order to retaliate against or deter the exercise of appellate rights, a mechanism for judicial correction has already been provided by Congress.[5] The courts of appeal need not overstep or attempt to extend their jurisdiction to anticipate and preempt such speculative abuses.

The other rationale offered by courts that have assumed the authority to reinstate or extend voluntary departure privileges—at least where the government's opposition rests solely on jurisdictional grounds—is that of expedience:

> Specifically, in *Umanzor–Alvarado v. INS,* 896 F.2d 14, 16 (1st Cir.1990), the court held that it had the authority to reinstate voluntary departure when the INS offered no evidence suggesting that, in the interim period between the [Board's] and its decisions, the alien had become ineligible for voluntary departure. The court opined:
>
> > We note that the government does not suggest it will present the district director with any other reason for refusing

the reinstatement. Under these circumstances, to require the petitioner to apply to the district director to pass upon the matter would be pointless, for the director could not lawfully refuse the reinstatement. We see nothing in the law that requires us to waste time and resources or that deprives us of the legal power to order the legally appropriate remedy—a remedy already granted by the Board.

*Id.*

*Ramsay,* 14 F.3d at 212. Several important considerations undermine the facial appeal of this practical approach.

First of all, it reflects both misplacement of the burden of persuasion and application of the wrong standard for the district director's decision. The INS need not somehow disprove the suitability of voluntary departure; it is the alien who "bears the burden of proving statutory eligibility for this form of relief and demonstrating that it is warranted." *Rivera–Zurita,* 946 F.2d at 120. Moreover, as we have seen, eligibility is just the first component in a two-pronged test that concludes with an exercise of administrative discretion. Thus, even if the alien has not done anything to render herself legally ineligible for reinstatement or extension of voluntary departure, the district director always retains discretion to grant or deny the privilege.

Secondly, it reflects a fundamental misapprehension of the nature of discretionary authority to conclude that because the Board once granted voluntary departure, the district director "could not lawfully refuse the reinstatement [thereof]." *Ramsay,* 14 F.3d at 212 (quoting *Umanzor–Alvarado,* 896 F.2d at 16). "The very concept of discretion presupposes a zone of choice within which the [decisionmaker] may go either way." *Kern v. TXO Prod. Corp.,* 738 F.2d 968, 971 (8th Cir.1984); *Johnson v. Mississippi,* 606 F.2d 635, 637 (5th Cir.1979). Indeed, "[t]he nature of discretionary matters is that they normally may properly be decided either

---

5. Significantly, the decisions arrogating to the court of appeals authority to reinstate or extend voluntary departure fail to acknowledge the body of case law, discussed *supra* at pages 1579–80, holding that the district director's decision as to such relief is subject to district court review under 8 U.S.C. § 1329.

way." *United States v. Tindle*, 808 F.2d 319, 328 (4th Cir.1986). Thus, in many cases, the Board and district director could reach different conclusions regarding the exercise of their respective discretionary authority without any indication of impropriety. To suggest that each and every divergence would necessarily reflect an illegal decision by either decisionmaker—let alone identify the district director as the only potential source of such error—is to confuse a discretionary decision with one that is legally mandated.

In order to buttress a similar argument, the Ninth Circuit compared the denial of voluntary departure following a petition for review with the imposition of a longer criminal sentence after retrial in vindictive retaliation for the exercise of appellate rights, as prohibited by *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *See Contreras–Aragon*, 852 F.2d at 1094. Actually, this analogy weighs in favor of the approach we adopt here. In *Macomber v. Hannigan*, 15 F.3d 155 (10th Cir.1994), this court held that a longer sentence imposed by a different judge after retrial does not raise a presumption of vindictiveness so long as "the record provides assurances that the more severe sentence simply reflects a fresh look at the facts and an independent exercise of discretion by the second sentencer." *Id.* at 156. "Moreover, it is not necessary that the second sentencing judge rely on and provide facts not available at the time of the first sentence to support the more severe sentence." *Id.* at 157. Certainly, if one federal court's discretionary determination of a criminal sentence does not bind a subsequent resentencing court, the Board's discretionary decision to grant voluntary departure does not legally or logically constrain the district director's subsequent and equally discretionary decision whether to reinstate or extend that administrative privilege—even absent evidence showing a change in circumstances.

Finally, we come back to the essential point concerning federal court jurisdiction upon which our disposition ultimately rests. Even if, as the First and Fourth Circuits note, there is *"nothing* in the law ... that *deprives* us of the legal power to order the legally appropriate remedy [of voluntary departure]," *Ramsay*, 14 F.3d at 212 (quoting *Umanzor–Alvarado*, 896 F.2d at 16) (emphasis added), we are not, by virtue of that negative observation, *affirmatively empowered* to act. And only when Congress has taken that latter, positive step are we invested with jurisdictional authority. *Finley*, 490 U.S. at 548, 109 S.Ct. at 2006; *Wyeth Lab.*, 851 F.2d at 324. The various remedial approaches adopted by our sister circuits are clearly motivated by a laudable concern for safeguarding the procedural rights of aliens in deportation proceedings. However, "[e]ven a sensible and efficient use of supervisory power ... [by federal courts] is invalid if it conflicts with constitutional or statutory provisions. A contrary result 'would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.'" *Thomas v. Arn*, 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985) (quoting *United States v. Payner*, 447 U.S. 727, 737, 100 S.Ct. 2439, 2447, .65 L.Ed.2d 468 (1980)).

The order of the Board of Immigration Appeals is AFFIRMED, and petitioner's request for reinstatement or extension of her voluntary departure date is DENIED without prejudice to a request properly addressed to the district director.