74 F.3d 1250
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Hellen C. Otero de OCANA; Jose X. Ocana; Hellen Xaviera
Ocana-Otero; Hellen Vanessa Ocana-Otero; Jose X.
Ocana-Otero, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-9506.
BIA Nos. Aup-jaj-poh
 United States Court of Appeals, Tenth Circuit.
 Jan. 16, 1996.
 
 1
 A29 557 651 Akr-jnp-pzs Aim-hyn-quf Azz-uud-jgp (Petition for Review)
 
 
 2
 Before BRISCOE and LOGAN, Circuit Judges, and THOMPSON,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 3
 THOMPSON, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Petitioners Hellen C. Otero de Ocana and Jose X. Ocana, and their children Hellen Xaviera, Hellen Vanessa, and Jose X. Ocana-Otero, seek review of the decision by the Board of Immigration Affairs (BIA) denying their petitions for asylum and withholding of deportation. Because the BIA's decision is supported by substantial evidence and no legal errors occurred, we affirm.
 
 
 6
 Petitioners are citizens of Nicaragua. Mrs. Otero de Ocana and daughter Hellen Xaviera entered the United States in 1985 as nonimmigrant visitors, and overstayed their visas. Mr. Ocana and the other two children entered the United States illegally in 1986. During deportation proceedings, petitioners conceded deportability, but requested relief in the form of asylum or withholding of deportation. After a hearing, the immigration judge (IJ) denied relief, finding that petitioners failed to demonstrate either a well-founded fear of persecution or a clear probability of persecution if they returned to Nicaragua.
 
 
 7
 On appeal, the Board affirmed the IJ's decision on the ground that petitioners did not meet their burden of showing either a well-founded fear of persecution or a clear probability of persecution if they returned to Nicaragua. The BIA also took administrative notice of changed conditions in Nicaragua, based on the recent elections, concluding that petitioners' fear of persecution was not reasonable because the Sandanistas no longer governed Nicaragua. This petition for review followed.
 
 
 8
 "An alien facing deportation who fears persecution if deported has two avenues of relief: asylum and withholding of deportation." Rezai v. INS, 62 F.3d 1286, 1288 (10th Cir.1995). "[A] grant of asylum requires two steps." Kapcia v. INS, 944 F.2d 702, 706 (10th Cir.1991). The alien must first establish that he or she is eligible for refugee status by presenting specific facts showing either past persecution or a genuine and reasonable fear of future persecution " 'on account of race, religion, nationality, membership in a particular social group, or political opinion.' " Id. (quoting 8 U.S.C. 1101(a)(42)). Upon demonstrating refugee status, the alien must then show that a favorable exercise of discretion is warranted. Id. at 708.
 
 
 9
 We review the BIA's determination of refugee status under a substantial evidence standard. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)("The BIA's determination that [the alien] was not eligible for asylum must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' ") (quoting 8 U.S.C. 1105a(a)(4)). We may reverse only if the evidence compels the conclusion that petitioners have a well-founded fear of persecution. Id. at 481 n. 1; Sadeghi v. INS, 40 F.3d 1139, 1142 (10th Cir.1994).
 
 
 10
 Here, the evidence does not compel such a conclusion. Petitioners testified that in 1980 threatening slogans were painted on their house, that their neighbor threatened them and sprayed gasoline on their house, and that their ration card was suspended for failure to participate in neighborhood guard duty (but that they were allowed to use a family member's card). They also testified that after 1980, their property was ransacked on several occasions, and that Mrs. Otero de Ocana was fired for her political conduct and was prevented from obtaining certain jobs. Finally, there was evidence that a car driven by Mrs. Otero de Ocana caught fire, raising the possibility of sabotage, and that the government did not renew her import-export license (although there was also evidence that she later voluntarily renounced her license).
 
 
 11
 " 'Persecution' or 'well-founded fear of persecution' encompasses more than just restrictions or threats to life and liberty." Baka v. INS, 963 F.2d 1376, 1379 (10th Cir.1992)(quotations and citations omitted). Further, "[p]otential job loss or generalized economic disadvantage ... does not equal persecution." Id. Although petitioners suffered some harassment by the Sandanistas, primarily in the early 1980's, this harassment did not rise to the level of persecution, and does not demonstrate a well-founded fear of persecution in the future.
 
 
 12
 Further, petitioners were not denied due process by the BIA's taking of administrative notice regarding changed conditions in Nicaragua. First, we note that the BIA's administrative notice merely supplemented its conclusion that petitioners failed to show past persecution or a reasonable fear of future persecution if they returned to Nicaragua. See R. at 6. Because the BIA's decision can be affirmed on this ground alone, any error in the BIA's taking of administrative notice would be harmless.
 
 
 13
 Second, unlike the petitioners in Llana-Castellon v. INS, 16 F.3d 1093, 1099 (10th Cir.1994), petitioners in this case were on notice that the BIA would consider the changed conditions in Nicaragua, and had an opportunity to be heard on this issue. Not only did petitioners testify about post-election conditions before the IJ and submit documentary evidence for his consideration, but such conditions also comprised one of their main issues on appeal to the BIA. See R. at 64 (Mrs. Otero de Ocana's testimony regarding the change in government); id. at 134, 156-57, 163, 171-72, 173, 248, 249 (articles on post-election conditions in Nicaragua, including Sandanista control of military and security forces); id. at 34 (notice of appeal identifying ground that the IJ "did not adequately consider the current unsettled conditions in Nicaragua"); id. at 18, 23 (brief arguing that new conditions in Nicaragua did not negate petitioners' well-founded fear of persecution because Sandanistas still controlled much of the government).
 
 
 14
 Finally, the BIA's decision did not contain a boilerplate paragraph regarding the effect of the Nicaraguan election, but noted instead the Sandanistas' continued control over the military and police and the fact that some civil strife and turmoil still existed. That is, the BIA accepted petitioners' assertions as to the Sandanistas' continued power in Nicaragua, but concluded that their fear of persecution was not well-founded given that the Sandanista party no longer governed the country. As petitioners were given the opportunity to address the post-election conditions in Nicaragua, the BIA did not abuse its discretion by taking administrative notice of the new government. See Kapcia, 944 F.2d at 705-06.
 
 
 15
 These conclusions are fatal to petitioners' request for withholding of deportation as well. "To obtain such relief, the burden is on the alien to establish a clear probability of persecution." Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir.1994)(quotations omitted). As petitioners failed to establish their statutory eligibility for a grant of asylum, they certainly did not meet the tougher standard required for withholding of deportation. Id.
 
 
 16
 The petition for review is DENIED.
 
 
 
 **
 Honorable Ralph G. Thompson, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3