F I L E D
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

**JUN 5 1997**

FOR THE TENTH CIRCUIT

**PATRICK FISHER**
Clerk

NADJI EDDINE HENNIENE,

Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 96-9527
(No. A72 662 295)
(Petition for Review)

ORDER AND JUDGMENT[*]

Before PORFILIO and LOGAN, Circuit Judges, and BURRAGE, District Judge.[**]

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    Honorable Michael Burrage, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

Petitioner seeks review of a final order of the INS denying his request for asylum or withholding of deportation.[1] The Board of Immigration Appeals (BIA) found he had not established the requisite "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A) (defining "refugee" status), and denied relief accordingly, see Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir. 1994) (failure to satisfy definition of refugee precludes asylum and, a fortiori, withholding of deportation). Mindful of the Supreme Court's admonition that "[t]o reverse the BIA finding we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it," INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992), we affirm.

---

[1] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, alters the availability, scope, and nature of judicial review in INS cases. However, because petitioner's deportation proceedings commenced before April 1, 1997, and the final decision of the INS issued before October 31, 1996, neither IIRIRA's permanent "new rules," nor its interim "transitional rules," apply to this case. See id. §§ 306(c)(1), 309(a), (c)(1) & (4), as amended Pub. L. No. 104-302, § 2, 110 Stat. 3657, set out in notes to 8 U.S.C. §§ 1101, 1252. In contrast, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, may apply to INS cases commenced, like this one, before AEDPA's enactment on April 24, 1996, see Fernandez v. INS, Nos. 95-9550, 96-9504, 1997 WL 240965 (10th Cir. May 12, 1997), though none of these appear pertinent to this petition for review, which does not involve deportation for criminal activity addressed by AEDPA.

Petitioner is a native Algerian. In 1992, he was recruited under an implied threat of violence by members of the Front Islamique du Salut (FIS) to contribute money and distribute leaflets at his shop for the anti-government group. Several months later, government security officers came into the shop to ask about the FIS. Petitioner, who was away on business at the time, learned from his family about these inquiries. He ceased his activities for the FIS, closed his shop, and moved to another city. Ultimately, he left the country and entered the United States without inspection in late 1993. He claims the dual threat of persecution by the Algerian government and the FIS precludes his safe return. We have reviewed the record and conclude the BIA properly denied relief.

With respect to governmental persecution, petitioner "failed to provide direct and specific evidence of facts that would support a reasonable fear that he faces persecution on account of" his brief, minor, and coerced relationship with the FIS in 1992. Hadjimehdigholi v. INS, 49 F.3d 642, 648 (10th Cir. 1995). His apprehension that the government might detain him for questioning, and then, upon hearing that he is unable to identify any FIS members, might torture him, is too speculative to compel rejection of the BIA's determination. The record does contain some general accounts of governmental hostility toward the FIS, but there is no particularized evidence of ill treatment with respect to similarly situated individuals. See id. at 648-49. Indeed, a United Nations report on Algerian

asylum-seekers specifically states that while *active* members of the now-outlawed FIS are "at risk of being exposed to serious difficulties including imprisonment," "[p]assive members or sympathizers of the FIS are not likely to be targeted." A.R. at 103.

As for persecution by the FIS, the BIA held petitioner had shown at most a "local" threat restricted to his prior residence--a finding insufficient to warrant relief under BIA precedent relating to nongovernmental persecution, which evidently requires proof of a countrywide threat directed at the petitioner (as opposed to proof of a direct threat from a group with a countrywide presence). See generally Sotelo-Aquije v. Slattery, 17 F.3d 33, 37-38 (2d Cir. 1994) (discussing and rejecting similar BIA decision). We need not decide the propriety of this restrictive rule, for even if we held that the pervasiveness of the FIS could not be ignored by focusing exclusively on the situs of a particular FIS threat, petitioner could not prevail.

The Supreme Court has held that "persecution on account of . . . political opinion" under § 1101(a)(42) is not implicated by mere resistance to recruitment by an anti-government group, at least when such resistance is not itself the expression of a (contrary) political opinion but, rather, simply an effort to avoid government retaliation. See Elias-Zacarias, 502 U.S. at 481-84; cf. Sotelo-Aquije, 17 F.3d at 36-37 (finding political persecution because guerrilla

organization threatened petitioner on account of his active, ideological opposition).  That is precisely the situation here.  <u>See</u> A.R. 50-52.  Thus, as in <u>Elias-Zacarias</u>, the denial of asylum must be affirmed because, whatever the merits of the BIA's determination regarding the requisite magnitude of the alleged threat, petitioner cannot satisfy the statutory condition regarding its political motivation.[2]

The petition for review is DENIED.

Entered for the Court

James K. Logan
Circuit Judge

---

[2]  Petitioner argues affirmance of the BIA for any reason not included in its decision is impermissible under the general principle barring an agency from defending its actions in court on the basis of post hoc rationales.  <u>See</u> <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 87-88 (1943).  This rule does not require futile, formalistic remands when despite (arguable) error in the agency's analysis, the result is clear under controlling law.  <u>See</u> <u>NLRB v. Wyman-Gordon Co.</u>, 394 U.S. 759, 766 n.6 (1969); <u>NLRB v. American Geri-Care, Inc.</u>, 697 F.2d 56, 64 (2d Cir. 1982) (discussing historical "softening" of <u>Chenery</u> rule; "[i]t does not mean that a reversal and remand are required each and every time an administrative agency assigns a wrong reason for its action . . . [but] *only* where there is a significant chance that but for the error, the agency might have reached a different result"); <u>see, e.g.,</u> <u>Osmani v. INS</u>, 14 F.3d 13, 15 (7th Cir. 1994) (declining to remand asylum application to BIA "where it is clear what the agency's decision has to be").  Indeed, in <u>Elias-Zacarias</u> itself, the Supreme Court affirmed the denial of asylum for lack of the requisite political motive although the BIA had relied on the lack of threat per se.  <u>Compare</u> <u>Elias-Zacarias</u>, 502 U.S. at 482-84, <u>with</u> <u>Elias-Zacarias v. INS</u>, 921 F.2d 844, 847-48, 851, 855 & n.14 (9th Cir. 1990) (discussing rationale of BIA decision), <u>rev'd</u>, <u>Elias-Zacarias v. INS</u>, 502 U.S. 478 (1992).