**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARTIN CALEL CHUMIL,

Petitioner,

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent.

No. 02-9566

(BIA No. A78-352-125)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.[**]

Twenty-seven year old Petitioner Martin Calel Chumil, a citizen of Guatemala,

entered the United States on March 31, 1998.  On March 22, 2000, Chumil filed an

"Application for Asylum and/or Withholding of Removal" with the United States

Justice Department.  On July 25, 2000, the Immigration and Naturalization Service

---

[*]  This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  The court generally disfavors
the citation of orders and judgments; nevertheless, an order and judgment may be cited
under the terms and conditions of 10th Cir. R. 36.3.

[**]  After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(A)(2).  The case is therefore
ordered submitted without oral argument.

(INS) charged Chumil with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien unlawfully present in the United States.[1] Chumil appeared for a hearing before an immigration judge (IJ) on November 6, 2000. Chumil did not contest his removability, and the IJ found the INS had established Chumil's removability by "clear and convincing evidence." See 8 U.S.C. § 1229a(c)(3)(A). Instead, Chumil claimed asylum under 8 U.S.C. § 1158(a)(1), withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture (CAT), 112 Stat. 2681-82 (codified as Note to 8 U.S.C. § 1231).[2] The IJ denied Chumil relief and the Board of Immigration Appeals (BIA) summarily affirmed. See 8 C.F.R. § 3.1(a)(7).[3] Chumil thereafter timely filed a Petition for Review with this Court. To the extent permitted, we exercise jurisdiction under 8 U.S.C. § 1252. Where the BIA summarily affirms an IJ's decision, as it did in this case, we review the IJ's decision as if it were the BIA's decision. Tsevegmid

---

[1] On March 1, 2003, the INS' functions were transferred to the United States Citizenship and Immigration Services within the newly-formed Department of Homeland Security (DHS). See Yuk v. Ashcroft, 2004 WL 79095, at *1 n.3, ___ F.3d ___, ___ n.3 (10th Cir. 2004). Throughout this order and judgment, we refer to the INS and DHS collectively as the INS.

[2] The United States implemented the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, in the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681 (1998).

[3] Chumil's claim that the BIA's summary affirmance regulations contained in 8 C.F.R. § 3.1(a)(7) are inconsistent with due process of law is no longer viable. In Yuk, 2004 WL 79095, at *4-9, ___ F.3d at ___-___ , we upheld the validity of the regulations, holding the BIA's summary affirmance procedures do not violate principles of administrative law or due process.

v. Ashcroft, 336 F.3d 1231, 1235 (10th Cir. 2003). The IJ's findings of fact "are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." Id. (internal quotations omitted). We dismiss the petition in part, deny it in part, and remand in part for further administrative proceedings.

I.

Chumil was the only witness to testify before the IJ. His testimony is well documented in the IJ's "Oral Decision," which we briefly summarize. In 1990, Chumil, age fourteen, joined the Guatemalan National Revolutionary Unity Organization (GNRUO) to protect his mother from Tomas Julajuj. GNRUO was a guerilla organization opposed to the Guatemalan Government. Julajuj, a commander in the GNRUO, pressured Chumil's mother to provide one of her children to the organization's cause. Chumil volunteered. Chumil received military training but worked primarily as a messenger and spy for the GNRUO from 1990-1997.

In December 1996, the GNRUO signed a peace accord with the Guatemalan Government. According to Chumil, Julajuj rejected the peace accord. Although Chumil left the GNRUO in 1997, Julajuj sought his return that same year by sending guerillas to his mother's home "on at least four occasions." Later that year, the Guatemalan Government held Chumil at a military installation for approximately thirty days. When Chumil resisted the government's interrogation, "they began

3

to beat him, burn him with cigarettes, kept him in unsanitary conditions, and even injected him with a drug" to make him talk. Chumil exhibited two small scars on his right wrist, which he claimed were the result of cigarette burns, and a two inch scar running along his right eye socket.

Following Chumil's release in late 1997, he returned home but soon learned Julajuj was again looking for him. Chumil hid briefly in Guatemala City before coming to the United States in early 1998. Chumil testified that if he returned to Guatemala, he believed Julajuj's guerillas would mistreat or kill him. Based upon the State Department's 1999 "Country Report on Human Rights Practices," however, the IJ found "no evidence or indication of continuing organized guerrilla activity" in Guatemala.

Finding Chumil's testimony credible, the IJ commented that Chumil "may have had a viable asylum claim had it been timely submitted." Absent "changed" or "extraordinary circumstances" as encompassed within 8 U.S.C. § 1158(a)(2)(D), subsection (a)(2)(B) requires an alien to file an application for asylum "within 1 year after the date of the alien's arrival in the United States." The IJ rejected Chumil's claim for asylum as untimely because Chumil failed to file his application for asylum within one year of the date of his arrival in the United States. The IJ concluded that "[n]either exceptional circumstances nor changed country conditions have been identified in this particular case and the Court would find that [Chumil] is precluded

4

from asylum consideration because of the failure to timely file the request." The IJ also rejected Chumil's claim for withholding of removal and protection under CAT on the merits because Chumil failed to show "it more likely than not" he would be persecuted or tortured if he returned to Guatemala.

## II.

A. *Asylum*

Under § 1158(a)(3), federal courts "do not have 'jurisdiction to review any determination' on whether an alien filed his application within a year of entry or whether 'changed circumstances' exist 'which materially affect the applicant's eligibility for asylum or extraordinary circumstances [exist] relating to the delay in filing an application.'" Tsevegmid, 336 F.3d at 1235. Here, Chumil arrived in the United States in March 1998 but did not apply for asylum until Spring 2000. Therefore, we have no jurisdiction to review the IJ's ruling regarding the timeliness of Chumil's asylum claim and may not address Chumil's argument that his fear of persecution in Guatemala is "well-founded." See Woldemeskel v. INS, 257 F.3d 1185, 1188-89 (10th Cir. 2001).[4]

_____

[4] In his reply brief, Chumil asserts we nevertheless should exercise jurisdiction because the IJ applied an improper standard in reviewing his claim of "changed" or "extraordinary circumstances." Section 1158(a)(2)(D) provides "[a]n application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General" such circumstances. Obviously, the IJ was not satisfied with Chumil's characterization of the circumstances surrounding his belated application.

(continued...)

B. *Withholding of Removal*

Section 1158(a)(3), however, does not proscribe our jurisdiction under § 1252 to review the IJ's denial of Chumil's request for withholding of removal or protection under CAT. See Tsevegmid, 336 F.3d at 1235. The burden of establishing entitlement to withholding of removal is "more demanding than the 'well-founded fear' standard applicable to an asylum claim." Id. at 1234. To establish entitlement to withholding of removal, an alien must show a "clear probability of persecution" or that "it is more likely than not" his "life or freedom would be threatened" because of (1) race, (2) religion, (3) nationality, (4) membership in a particular social group, and/or (5) political opinion. 8 U.S.C. § 1231(b)(3)(A); Woldemeskel, 257 F.3d at 1193. An alien can meet this burden in one of two ways. *First*, if the alien demonstrates he suffered *past* persecution in his country of removal based on any of the foregoing five factors, a presumption arises that the alien's "life or freedom would be threatened in the future." 8 C.F.R. § 208.16(b)(1). The INS may rebut this presumption if it establishes, and the IJ finds by a preponderance of the evidence, either (1) a fundamental change in the circumstances exists such that the alien's life or freedom would not be threatened as

---

[4](...continued)
Nothing in the record suggests the IJ applied an improper standard in reaching his determination. Compare Karsaev v. Ashcroft, 2004 WL 95868, at *1 n.1 (10th Cir. 2004) (unpublished) (concluding the court lacked jurisdiction to consider whether the IJ applied improper standard of proof where the application for asylum was untimely filed).

a result of any of the factors, or (2) where it would be reasonable to do so, the alien could avoid a future threat by relocating to another part of the country. Id. § 208.16(b)(1) (A), (B). *Second*, if an alien is unable to demonstrate past persecution, he may establish "it is more likely than not" he would suffer *future* persecution if returned to the country of removal. Id. § 208.16(b)(2); see also INS v. Stevic, 467 U.S. 407, 429-30 (1984) (equating "clear probability" with "more likely than not").

The record in this case supports the IJ's finding, based upon an acceptable view of the evidence, that Chumil failed to establish entitlement to withholding of removal under § 208.16(b)(2). While Chumil's fear for his safety in Guatemala may be "well-founded," Chumil did not establish a "clear probability" of persecution or that persecution is "more likely than not" if he returns to Guatemala. The IJ did not err in finding no "reason or basis" existed "to assume that [Chumil] would again be mistreated . . . should he return to Guatemala some four years after the cessation of the Guatemalan civil war." Thus, Chumil failed to satisfy his burden under § 208.16(b)(2). We shall not disturb the IJ's finding that Chumil is ineligible for withholding of removal based on the likelihood of future persecution.

We reach a different conclusion, however, with the respect to the issue of past persecution under § 208.16(b)(1). Chumil argues his own testimony, which the IJ found credible, was sufficient to establish he suffered past persecution and thus triggered § 208.16(b)(1)'s presumption his "life or freedom would be threatened in the future."

The INS acknowledges the IJ "never reached the issue of past persecution as it relates to whether [Chumil] met his burden of establishing withholding of removal."[5] The IJ specifically noted Chumil testified he was forced into service with the GNRUO and subsequently tortured by Guatemalan military personnel before entering the United States. The IJ made no findings and reached no conclusions, however, as to whether Chumil established he suffered past persecution in Guatemala on account of one or more of the enumerated factors. See 8 C.F.R. § 208.16(b)(1). Given the IJ's finding that Chumil was a credible witness, and his apparent belief Guatemalan officials had in fact tortured him, Chumil's testimony may be sufficient to establish past persecution. If so, a presumption of future persecution arises under § 208.16(b)(1) and Chumil

---

[5] Notably, INS' only response to Chumil's past persecution argument is that he failed to exhaust his administrative remedies with respect to this issue. We are satisfied however, that Chumil exhausted his administrative remedies with respect to the issue of past persecution. In the "Notice of Appeal" Chumil filed with the BIA, he stated he was appealing the IJ's decision denying his claim for withholding of removal. Chumil further stated the IJ erred in "its application of the burden of proof in withholding of removal cases," and in "denying [the] application for . . . withholding of removal . . . under the evidence presented." In his BIA brief, Chumil admittedly focused on his asylum claim. Nevertheless, Chumil did assert that "[a] finding of past persecution triggers a regulatory presumption that the applicant has a well-founded fear of future persecution," and that "[i]nformation about general changes in the country is not sufficient to rebut this presumption." Chumil moreover requested the BIA to "reverse the order of the [IJ] and grant him withholding of removal." These assertions were sufficient to allow the BIA to review and adjudicate Chumil's withholding of removal claim, including his reliance on "past persecution" under 8 C.F.R. § 208.16(b)(1). See Rojas -Garcia v. Ashcroft, 339 F.3d 814, 818-19 (9th Cir. 2003) (concluding an alien adequately exhausted his administrative remedies by filing a notice of appeal and motion for reconsideration with the BIA which, considered together, raised issues asserted in federal court).

8

is entitled to withholding *unless* the INS rebuts the presumption by establishing either (1) "a fundamental change in circumstances" in Guatemala, or (2) Chumil could avoid future threat "by relocating to another part of" Guatemala and "it would be reasonable to expect [Chumil] to do so." Id. § 208.16(b)(1)(A), (B); see also id. § 208.16(b)(3) (addressing reasonableness of internal relocation). Therefore, we shall remand this matter to the BIA for it, or the IJ, to determine in the first instance if Chumil suffered past persecution, and if so, to give the INS the opportunity to rebut the presumption of future persecution.

C. *Convention Against Torture*

To establish entitlement to protection under CAT, an alien must show "it is more likely than not he would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Unlike § 208.16(b) relating to withholding of removal, subsection (c) does not provide any presumptions in favor of the alien based on past persecution. While "[t]he testimony of the [alien], if credible, *may* be sufficient to sustain the burden of proof without corroboration," such a finding is not mandatory. Id. (emphasis added). In denying Chumil's request for protection under CAT, the IJ reasoned Chumil had not established "it is more likely than not," Chumil would be tortured if returned to Guatemala. For the same reasons we upheld the IJ's finding regarding Chumil's alleged threat of future persecution under § 208.16(b)(2), we uphold the IJ's finding regarding Chumil's alleged threat of future torture under § 208.16(c)(2).

9

Chumil's Petition for Review is DISMISSED IN PART and DENIED IN PART. We REMAND this matter for further proceedings consistent with this order and judgment.[6]

Entered for the Court,


Bobby R. Baldock
Circuit Judge

---

[6] We are unable to entertain Chumil's request to extend any voluntary departure date established by the INS. In Castaneda v. INS, 23 F.3d 1576, 1578-83 (10th Cir. 1994), we held we lack jurisdiction to consider an alien's request for extension or reinstatement of voluntary departure. Chumil's request is properly addressed to the District Director in the first instance. See 8 C.F.R. § 240.26(f).