**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHANDRA ISMAIL; RASMILIA
CHANDRA; SYIFARIZA
ALDAMILIA; ZANNY ZAPATA
CHANDRA,

        Petitioners,

v.

BUREAU OF IMMIGRATION AND
CUSTOMS ENFORCEMENT, a
Federal Government Agency; NURIA
PRENDES, Field Office Director for
Detention and Removal, ALBERTO
GONZALES, Attorney General of the
United States,

        Respondents.

No. 05-9591
(Nos. A97-192-114 A97-192-113
A97-192-115, A97-192-055)
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Members of the Chandra family, who are citizens of Indonesia and members of the Islamic faith, seek review of a Final Order of Removal issued by the Bureau of Immigration Appeals (BIA). In particular, they claim error in the denial of their request for restriction on removal, also known as withholding of removal.[1] We deny the petition for review.

I.

Rasmilia Chandra, the wife and mother of the family, filed a Form I-589 Application for Asylum and for Withholding of Removal for herself; her husband, Chandra Ismail; and her minor daughter, Syifariza Aldamilia. Zanny Zapata Chandra, one of Rasmilia's two adult sons, filed an independent application which was considered at the same time.[2]

From the parties' filings and testimony about conditions in Indonesia, a picture of general civil disorder emerges. Chandra Ismail portrays himself as an individual with moderate, democratic views who has lived through various difficulties over the last four decades. After a 1974 student demonstration against the military junta, he was detained and questioned for a week. While employed

---

[1]     The Immigration and Naturalization Act referred to "restriction on removal" as "withholding of removal prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996." *Elzour v. Ashcroft*, 378 F.3d 1143, 1148 n.5 (10th Cir. 2004). Agency regulations and forms, however, still refer to the relief as "withholding of removal." *See, e.g.*, 8 C.F.R. § 1208.3(a).

[2]     The status of another adult son, Giribaldi Chandra, is not at issue in this petition for review.

-2-

as a business and banking journalist for Infobank Magazine, he joined Yapila, an Islamic organization. In 1994, he recognized that the organization was becoming more radical. He withdrew from the organization, accepted an Infobank scholarship to study in the United States, and traveled with his family to Oklahoma City. In 1997, Ismail, his wife, and daughter returned to Indonesia, but the older sons remained in the United States as students.

Shortly after the family's return, Indonesia was engulfed in demonstrations, riots, economic tumult, and ethnic animosity. Rasmilia Chandra wears a veil, which may make her a target of non-Islamic people. During a major riot in 1998, she was injured and her brother was killed in her presence. In February 2000, she was hit by a thrown rock in a market riot.

In May 2000, Chandra Ismail was fired from his job at Infobank. The same year, the family traveled to the United States, then returned to Indonesia. While job-seeking in Indonesia, Ismail wrote freelance articles about the advantages of democracy and the dangers of extremist groups. These articles offended members of radical Islamic organizations. His former group, Yapila, intimidated him by asking for donations, and, when he refused the request, by threatening the safety of his family. In the summer of 2001, the family visited the sons in Oklahoma City and remained there. Though they overstayed their visas, family members did not seek a change in immigration status until 2003, when they applied for asylum, withholding of removal, and relief under the Convention Against Torture.

II.

At the opening of the merits hearing, the Immigration Judge (IJ) commented that he "wanted to do [the hearing] right," but asked for the parties' assistance in expediting it. Admin. R. at 188. Chandra Ismail testified as the principal witness, who was familiar with the circumstances of all family members. He explained that the family's application was filed over one year after their visas expired because he was a full-time care giver while Rasmilia Chandra suffered from severe depression. The thrust of his substantive testimony was that, as a journalist and moderate Muslim, he would be killed if required to return to Indonesia. He was concerned that his sons would be recruited by extremists and his daughter would be sexually harassed.

Rasmilia Chandra testified about her own reasons for not going back: danger to her husband, fear arising from the death of her brother and her own injuries, extremist recruitment of her sons, risks to her daughter, and the fact that she no longer had parents there. After Rasmilia's testimony, counsel for the family stated that further witnesses would provide only "corroboration of what's already been said." Admin. R. at 212. The IJ declared that he did not see a need for repetitive testimony. No other family members testified.

After the attorneys made their closing statements, the IJ announced his oral decision. He determined that all family members were ineligible for asylum because they failed to file their applications within one year of their arrival in this

country and they presented no statutorily sufficient justification for the delay. *See* 8 U.S.C. § 1158(a). Additionally, the IJ evaluated the evidence and concluded that there was no showing of "past persecution in the many years and decades that the parents resided [in Indonesia]" and, in the future, no "significant prospect that they'd be singled out or that they would have greater danger in Indonesia than any other ethnic Indonesian Muslim would likely face." Admin. R. at 134-35. The IJ therefore denied the application for asylum, withholding of removal, and protection under the Convention Against Torture.

The family then appealed to the BIA, raising three issues. Their claims were that (1) one family member's depression justifies delay of an asylum request; (2) reasonable people in the family's circumstances would fear persecution; and (3) Zanny Zapata Chandra's due process rights arising from his independent application were violated by the lack of his testimony. In a per curiam order, the BIA agreed with the IJ's factual findings and legal conclusions concerning the untimeliness of the asylum claim and the lack of eligibility for the requested relief from removal. It also determined that Zanny Zapata Chandra had an adequate opportunity to present his claims.

### III.

On petition for review in this court, the family has abandoned its asylum claim. *See* 8 U.S.C. § 1158(a)(3) (providing that the federal courts lack "jurisdiction to review any determination" on whether alien filed asylum request

-5-

within a year of entry or whether changed or extraordinary circumstances excused delay). Instead, the family asserts that it is entitled to withholding of removal and also argues that the BIA should have remanded the case for further proceedings, allowing Zanny Zapata Chandra an opportunity to testify.

As a threshold matter, respondents argue that this court may not exercise jurisdiction over a challenge to the denial of withholding of removal because the family's BIA appeal was confined to asylum issues. This court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." Id. § 1252(d)(1). We have previously recognized that "[t]he failure to raise an issue on appeal to the [BIA] constitutes failure to exhaust administrative remedies" and "deprives the Court of Appeals of jurisdiction to hear the matter." *Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991).

Respondents' exhaustion argument is unpersuasive. An alien applies for asylum on a "Form I-589, Application for Asylum and for Withholding of Removal." The form is "deemed to constitute at the same time an application for withholding of removal." 8 C.F.R. § 1208.3(a), (b). The family expressed their BIA-appeal issues in the context of "an asylum application." Admin. R. 13-14. In light of the controlling regulations, the appeal encompassed matters related to withholding of removal. Accordingly, family members exhausted their available

-6-

administrative remedies and this court has jurisdiction to review the substance of the issues raised in their petition for review.

For purposes of our review, the BIA's per curiam order is the final order of removal, but we also look to the IJ's decision for its fuller explanation of the grounds of decision affirmed by the BIA. *See Uanreroro v Gonzales,* 443 F.3d 1197, 1204 (10th Cir. 2006). We review all legal determinations de novo and all factual determinations for substantial evidence. *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). The factual findings are conclusive unless the record demonstrates that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To obtain the relief of withholding or restriction on removal, a petitioner must show "a clear probability of persecution attributable to race, religion, nationality, membership in a particular social group, or political opinion." *Sviridov v. Ashcroft*, 358 F.3d 722, 729 (10th Cir. 2004) (quotation omitted). "A 'clear probability' means the persecution is more likely than not to occur upon return." *Uanreroro,* 443 F.3d at 1202 (quoting *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004)). After a careful review of the administrative record, we conclude that substantial evidence supports the BIA's determination that the family members did not demonstrate a clear probability of persecution in Indonesia.

The IJ based its decision on several factors. First, the family members only expressed generalized concerns about their fears of forced recruitment in radical groups. The evidence of violence they testified about was directed more at tourists from other countries and not at indigenous Muslims. In addition, Ismail provided no published copies of his magazine articles that he claimed made him a target of retribution. In any event, the articles were over four years old and the IJ concluded that Ismail had not shown a particularized concern at the present time for persecution arising from them. Even Ismail's testimony about his former group, Yapila, does not clearly suggest that he was singled out for threats because of the articles. Finally, Ismail continued to travel without incident to Indonesia several times before deciding to file an (untimely) petition for asylum. Nothing suggests that the Indonesian government was a part of the threats made to Ismail, or is unable to respond to claims of violence. Because we are not compelled to reverse the BIA's factual findings on this record, we affirm its ruling on withholding of removal.

Next, we turn to Zanny Zapata Chandra's claim that the IJ's interest in expediting the merits hearing resulted in a violation of the controlling regulations and an infringement of his due-process rights. Specifically, he claims that he was not "examined under oath on his . . . application" or allowed to "present evidence and witnesses in his . . . behalf, " 8 C.F.R. §§ 1240.11(c)(3)(iii), 1240.49(c)(4)(iii), and thus deprived of "an opportunity to be heard at a

meaningful time and in a meaningful manner," *Woldemeskel v. INS*, 257 F.3d 1185, 1193 (10th Cir. 2001) (quotations omitted). To establish a due process violation, an alien must show that an error resulted in prejudice "implicat[ing] the fundamental fairness of the proceeding." *Michelson v. INS*, 897 F.2d 465, 468 (10th Cir. 1990).

Zanny Zapata was sworn in and asked to affirm the veracity of the information on his application. He was not precluded from testifying. Though the IJ urged petitioners and their counsel to be expeditious, he also stated he wished to conduct a proper hearing. After Chandra Ismail and Rasmilia Chandra testified at the merits hearing, the family's attorney did not present any further witnesses. According to the attorney, the children based their claims on the parents' situation, and additional testimony would be corroborative.

The record demonstrates no prejudice flowing from the lack of Zanny Zapata's testimony. Moreover, his attorney waived his right to testify on his own behalf. We conclude that Zanny Zapata has received all the process due to him.

The petition for review is DENIED. We lack jurisdiction to consider petitioners' alternative request for relief from this court: reinstatement of the BIA's expired grant of voluntary departure. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994).

Entered for the Court


Timothy M. Tymkovich
Circuit Judge