**Elian BOLANOS, Plaintiff-Appellant,**

v.

**Maurice F. KILEY, District Director, Immigration and Naturalization Service, New York District, Defendant-Appellee.**

No. 647, Docket 74–2561.

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1975.

Decided Jan. 29, 1975.

Peter Hirsch, Corona, N.Y. (Belovin & Fleishman, Corona, N.Y., of counsel), for plaintiff-appellant.

Prosper K. Parkerton, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E.D. N.Y., and Paul B. Bergman, Asst. U. S. Atty., of counsel), for defendant-appellee.

Before WATERMAN, FRIENDLY and GURFEIN, Circuit Judges.

FRIENDLY, Circuit Judge:

Plaintiff Elian Bolanos, a citizen of Colombia, entered the United States on July 22, 1973 on a visitor's visa which expired on August 12 of that year. The visa was not extended and Bolanos remained illegally. On March 6, 1974, he was arrested by members of the New York City Police Department and charged with first degree robbery, second degree assault and possession of weapons. After he had presented alibi evidence, the grand jury failed to indict him and, on April 16, the charges were dismissed.

As a result of Bolanos' arrest his whereabouts became known to the Immigration and Naturalization Service (INS) which lodged a detainer warrant. Upon his release from custody by the New York City police, he was turned over to the INS, which instituted a deportation proceeding. On April 18, 1974, a hearing was held before a Special Inquiry Officer pursuant to § 242 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1252. The Special Inquiry Officer found him deportable under §§ 241(a)(2)

and (9), and ordered him to be deported but, as permitted by § 242(b), granted him the privilege of voluntary departure[1] through May 18, 1974 and also required him to post a $500 bond. Although this limitation on the period for voluntary departure was subject to administrative appeal, 8 C.F.R. § 242.21, and thereafter to review in this court under § 106(a) of the Immigration and Nationality Act, see Foti v. INS, 375 U.S. 217, 229, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), no appeal was taken.

Instead Bolanos chose simply to allow the period for voluntary departure to expire. On July 26, 1974, he married a permanent resident of the United States,[2] with whom he has conceived a child. On October 16, nearly five months after expiration of the period for voluntary departure, Bolanos applied to the District Director under § 244(e) for an extension of the period in which he might remain in the United States and ultimately depart voluntarily. This was predicated not on his marriage, as it could not be under the present policy of the INS, see Noel v. Chapman, 508 F.2d 1023 (2d Cir., filed Jan. 3, 1975), but on his intention to prepare and institute an action under the Civil Rights Act, 42 U.S.C. § 1983, against members of the New York City Police Department because of his arrest on March 6, 1974 and subsequent incarceration; Bolanos sought an extension of indefinite duration until the suit was resolved. The District Director denied the application except to the limited extent of postponing the voluntary departure date to November 7, 1974.[3] Bolanos did not depart.

Instead, only one day prior to the date fixed, he filed the complaint in this action in the District Court for the Eastern District of New York seeking to enjoin his deportation and a civil rights action against the New York City Police Commissioner.[4]

Bolanos moved for a temporary injunction. Chief Judge Mishler, correctly holding that he had jurisdiction, see Cheng Fan Kwok v. INS, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), denied the motion in a memorandum order entered on November 19,[5] from which plaintiff has appealed. On November 29 Chief Judge Mishler denied a further stay. Another panel of this court, on December 10, granted a stay pending argument of an expedited appeal; we extended the stay pending decision.

■ There is no merit in the claim most strongly pressed by Bolanos, namely, that the Constitution prohibits his deportation under the circumstances here presented. We can readily agree that the due process and equal protection clauses of the Fourteenth Amendment apply to aliens within the United States, see In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); Gordon v. Garrson, 77 F.Supp. 477 (E.D.Ill.1948); Robeson v. Fanelli, 94 F.Supp. 62, 70 (S.D.N.Y. 1950); Simon v. Lovgren, 368 F.Supp. 265, 268–269 (D.V.I.1973), and even to aliens whose presence here is illegal. See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (due process clause of Fifth Amendment). We can likewise agree that the familiar com-

---

1. In contrast to an alien who has departed voluntarily, an alien who has been deported is faced with several not insignificant barriers to readmission to the United States. See §§ 212(a)(16), (17), 8 U.S.C. §§ 1182(a)(16), (17); Gordon & Rosenfield, Immigration Law and Procedure § 2.33 (1973).

2. The district court's memorandum states that Bolanos had married an American citizen. However, Bolanos has made no such claim and both his original complaint in the district court and his brief on appeal allege only that his wife is a permanent resident.

3. Denial by the District Director of an alien's request for an extension of the time within which he may depart voluntarily is not administratively appealable. 8 C.F.R. § 244.2.

4. Bolanos has also filed a state court action for false arrest against Willie Richardson, who allegedly requested his arrest.

5. Meanwhile the District Director had extended the stay of deportation until December 2.

bination of 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) affords such an alien access to the federal courts to assert a claim of violation of those clauses by a state officer. None of this means, however, that by claiming that state officers have violated his constitutional rights, an otherwise deportable alien obtains a constitutional right to remain in the United States for whatever period the resolution of his claim may require. The refusal of the District Director to extend the date for Bolanos' voluntary departure is thus to be viewed under the usual test of abuse of discretion.

In United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 491 (2 Cir. 1950), Judge Learned Hand spoke, in language later quoted with approval in Jay v. Boyd, 351 U.S. 345, 354 n. 16, 76 S.Ct. 919, 100 L.Ed. 1242 (1956), of the power to suspend deportation as "a dispensing power, like a judge's power to suspend the execution of a sentence, or the President's to pardon a convict." He concluded that a court may not upset denial of such a suspension unless "it affirmatively appears that the denial has been actuated by considerations that Congress could not have intended to make relevant." 180 F.2d at 491. In Wong Wing Hang v. INS, 360 F.2d 715, 719 (2 Cir. 1966), framing the test a bit more liberally, we concluded that:

> the denial of suspension to an eligible alien would be an abuse of discretion if it were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group, or, in Judge Learned Hand's words, on other 'considerations that Congress could not have intended to make relevant.' United States ex rel. Kaloudis v. Shaughnessy, supra, 180 F.2d at 491.

*See also* Fan Wan Keung v. INS, 434 F.2d 301 (2 Cir. 1970); Noel v. Chapman, *supra.*

■ Bolanos would have brought himself within either formulation if he had been able to demonstrate that the refusal to grant a further extension was in reprisal for his suing the Police Commissioner. But nothing of the sort was claimed, much less proved, in the district court. The refusal to extend the date of voluntary departure rested on entirely sufficient grounds. In addition to Bolanos' initial violation, for which no explanation has been offered, he ignored the departure date of May 18, 1974, which he had in effect accepted, and made no application for an extension for five months after its expiration. Even then he had not filed the civil rights action and another three weeks were required for his attorneys to "prepare" a two page complaint against the Police Commissioner. While something was said in the district court's memorandum and at the argument before us about instances in which stays have been granted to permit the prosecution of other types of litigation, see Kladis v. INS, 343 F.2d 513 (7 Cir. 1965); Adame v. INS, 349 F.Supp. 313 (N.D.Ill.1972), the record is barren of evidence that would warrant a conclusion that the District Director was motivated by an invidious factor rather than by Bolanos' dilatory conduct.

Despite all this we have been concerned lest immediate deportation might cause Bolanos to be unduly hampered in prosecuting his claim. But the stays granted during the course of this litigation have largely taken care of this problem. The appellant's brief advises us that he was being deposed by the Police Commissioner during the very week when we heard argument; this should long since have been completed. To make assurance of its completion doubly sure, we will continue the stay until the issuance of our mandate. Moreover, although we are probably unable to compel such action, see United States v. Phelps, 22 F.2d 288 (2 Cir. 1927), cert. denied, 276 U.S. 630, 48 S.Ct. 324, 72 L.Ed. 741 (1928), we would expect the appropriate consul to issue Bolanos a visitor's visa when his cases come on for trial.

Affirmed.