DENNIS, Circuit Judge,
concurring in part and dissenting in part:
I concur in parts I through III B of the majority opinion. I also concur in the majority opinion’s decree insofar as it affirms the district court’s dismissal of Humphries’ entrapment and breach of contract claims, re *947 verses the district court’s dismissal of his involuntary servitude and mistreatment claims, and denies the government’s motion to strike his appeal.
I respectfully dissent, however, from the majority opinion’s affirmance of the district court’s dismissal of Humphries’ Bivens action for money damages based on alleged violations of his First Amendment rights and from the majority’s failure to reject as un-meritorious the government’s argument that Heck v. Humphrey bars the federal courts from considering the plaintiffs civil actions.
1.
In Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that when a state prisoner seeks damages in a 42 U.S.C. § 1983 suit, the complaint must be dismissed if “a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,” unless the plaintiff can show that the conviction or sentence has already been invalidated. Heck, 512 U.S. at 487, 114 S.Ct. 2364. “But[,the Court added, when] the plaintiffs action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.” Id. In Edwards v. Balisok, 520 U.S. 641, -, 117 S.Ct. 1584, 1586, 137 L.Ed.2d 906 (1997), the Court held that a prisoner’s § 1983 claim for damages should also be dismissed even when the complaint limits his request to damages for depriving him of good-time credits without due process, not for depriving him of good-time credits undeservedly as a substantive matter, if the nature of the challenge to the procedures is “such as necessarily [will] imply the invalidity of the judgment.” Id. at 1587.
In the present case, however, the Heck and Balisok holdings do not require that the plaintiffs Bivens civil actions for damages be dismissed. Alexander Tito Humphries is not a state prisoner. See, e.g., Ojo v. INS, 106 F.3d 680 (5th Cir.1997) (stating that a detained alien is not a prisoner within the meaning of criminal law). He has not been convicted of any crime or sentenced therefor. INS v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (stating that deportation proceeding is a purely civil action to determine an alien’s eligibility to remain in the United States). Consequently, because “the plaintiffs action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.” Heck, 512 U.S. at 487, 114 S.Ct. 2364.
2.
As the majority opinion correctly holds, there are “other bars” to some, but not all, of the plaintiffs actions. I agree with the majority opinion that Humphries does not have standing to assert a claim based on the alleged entrapment of Sunday Ukwu, that The district court does not have jurisdiction to entertain Humphries’ claims for breach of contract, and that Humphries’ petition to enjoin the removal proceedings was mooted by the definitive finality of the removal order and his actual removal to Kenya.
3.
On the other hand, although I agree with the majority’s result in allowing Humphries to proceed on his claims based on constitutional due process and involuntary servitude violations, I believe the majority did not apply the correct analysis in determining the contours of Humphries’ directly implied constitutional rights, and consequently erred in concluding that his First Amendment claim is hatred. The majority treated the constitutional provisions supporting Humphries’ claims as if they were statutes to be reconciled with the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and therefore reached the incorrect result in affirming the dismissal of Hum-phries’ Bivens action for money damages based on alleged violations of his First Amendment rights. Under the analysis required by the Supreme Court’s decisions, however, none of Humphries’ actions for money damages based on the federal agents’ alleged violations of his constitutional rights is frivolous or falls outside the jurisdiction of the federal district court.
*948 The federal judicial power extends to all cases, in law and equity, arising under the Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority. U.S. Const, art. Ill, § 1, cl. 2. Since 1875, Congress has provided the federal trial courts with general jurisdiction over such cases. See Judiciary Act of March 3, 1875, § 1, 18 Stat. 470; Schweiker v. Chilicky, 487 U.S. 412, 420, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). The statute now provides that the “district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. § 1331.
All persons within the territory of the United States are entitled to the protections guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution. Wong Wing v. United States, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896). Aliens living within the jurisdiction of the United States are protected from deprivation of life, liberty or property without due process of law, despite the fact that such presence is unlawful, involuntary or transitory. Mathews v. Diaz, 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). In general, therefore, a United States district court may consider the merits of a Bivens action for money damages, asserted by a nonresident alien who is present in this country, against federal government officials. See Xiao v. Reno, 837 F.Supp. 1506 (N.D.Cal.1993); Immigration Law Service § 27:14 (Alan Jacobs ed., Clark Boardman Callaghan 1994).
Similarly, under 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any alien within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, is ha-ble to the alien injured in an action at law, suit in equity, or other proceeding for redress. Examining Board Of Engineers, Architects & Surveyors v. Flores De Otero, 426 U.S. 572, 599-600, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976); Holley v. Lavine, 529 F.2d 1294, 1295 (2d Cir.), cert. denied, 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976); Immigration Law Service § 27:29 (Alan Jacobs ed., Clark Boardman Callaghan 1994). Section 1983, of Title 42, U.S.C., combined with 28 U.S.C. § 1343(3), affords aliens within the United States access to federal courts to assert claims for violations of the due process and equal protection clauses of the United States Constitution. Bolanos v. Kiley, 509 F.2d 1023 (2d Cir.1975). This Circuit has held that civil rights class actions may be brought by aliens challenging the alleged denial of civil rights, provided the class description is sufficiently definite and the class has some connection with the claim being litigated. Jagnandan v. Giles, 379 F.Supp. 1178 (N.D.Miss.1974), aff'd in part, 538 F.2d 1166 (5th Cir.1976), cert. denied, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977).
A petition alleging that a plaintiff has been damaged by violations of his federal constitutional rights by a federal agent acting under color of federal authority gives rise to a federal cause of action for money damages for any injuries the plaintiff has suffered as a result of the agent’s constitutional violation. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 396, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fourth Amendment violation); Davis v. Passman, 442 U.S. 228, 245, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment violation); Carlson v. Green, 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment violation). “[T]he decision in Bivens established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award against the responsible federal official.” Butz v. Economou, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). It is clear that a district court has jurisdiction under 28 U.S.C. § 1331(a) to consider such a constitutional claim by a petitioner. Davis, 442 U.S. at 236, 99 S.Ct. 2264 (citing Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).
In determining whether a cause of action may be implied directly under a provision of the United States Constitution, it is error to apply the criteria enunciated by the Supreme Court for ascertaining whether a private cause of action may be implied from a statute not expressly providing one. Id. at 240, 99 S.Ct. 2264. “[T]he question of who may en *949 force a statutory right is fundamentally different from the question of who may enforce a right that is protected by the Constitution.” Id. (emphasis in original). At least in the absence of a “textually demonstrable constitutional commitment of an issue to a'coordinate political department,” it is presumed that justiciable constitutional rights are to be enforced through the courts. Id. at 242, 99 S.Ct. 2264. Further, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights. Id.
The inquiry of whether money damages is an appropriate form of relief under such a cause of action must be approached on the basis of the established principles of law. Davis, 442 U.S. at 245, 99 S.Ct. 2264. Federal courts may use any available remedy to make good the wrong done, where legal rights have been invaded and a federal statute prorides for a general right to sue for such invasion. Id. (citing Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)); Thus, federal courts have the authority to provide redress for constitutional violations in the form of an action for money damages, except that the exercise of that authority may not be appropriate where Congress has created another remedy that it regards as equally effective, or where “special factors counse[l] hesitation [even] in the absence of affirmative action by Congress.” Bivens, 403 U.S. at 396-97, 91 S.Ct. 1999; see Schweiker, 487 U.S. at 435, 108 S.Ct. 2460 (Brennan, J., dissenting).
In the present case, as in Bivens, Davis v. Passman, and Carlson v. Green, it is appropriate for the federal courts to exercise'their authority to provide redress for constitutional violations in the form of an action for money damages. Congress has not created another remedy that it regards as equally effective, and there are no “special factors [that] counse[l] hesitation [even] in the absence of affirmative action by Congress.” Bivens, 403 U.S. at 396-97, 91 S.Ct. 1999. The context of the present case is quite dissimilar to those few instances in which the Supreme Court has refused to recognize a Bivens action to redress constitutional wrongs because “the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration.” Schweiker, 487 U.S. at 423, 108 S.Ct. 2460.
In Chappell v. Wallace, 462 U.S. 296, 302, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Court declined to permit an action for damages by enlisted military personnel seeking redress from their superior officers for constitutional injuries, noting that Congress, in the exercise of its “plenary constitutional authority over the military, has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life____ The resulting system provides for the review and remedy of complaints and grievances such as [the equal protection claim] presented by respondents.” That system allowed military personnel to raise constitutional challenges in administrative proceedings and authorized recovery of significant consequential damages, such as retroactive promotions. Id. at 303, 103 S.Ct. 2362. In Bush v. Lucas, 462 U.S. 367, 385, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Court concluded that, in light of the “elaborate, comprehensive scheme” governing federal employment relations, recognition of any supplemental judicial remedy for constitutional wrongs was inappropriate. Under that scheme, constitutional challenges are fully cognizable and prevailing employees are entitled to full backpay, retroactive promotions, seniority, pay raises, and accumulated leave. Id. at 386, 103 S.Ct. 2404. Congress expressly “intended [to] put the employee ‘in the same position he would have been in had the unjustified or erroneous personnel action not taken place.’ ” Id. at 388, 103 S.Ct. 2404 (quoting S.Rep. No. 1062, 89th Cong.2d Sess., 1 (1966)). Similarly, in Schweiker, the Court decided that the improper denial of individuals’ Social Security disability benefits, allegedly resulting from Fifth Amendment due process violations by government officials administering the program, did not give rise to an action for money damages, noting that the “claims are handled under ‘an unusually protective *950 [multi]-step process for the review and adjudication of disputed claims,’ ” Schweiker, 487 U.S. at 424, 108 S.Ct. 2460 (quoting Heckler v. Day, 467 U.S. 104, 106, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984)), “[o]nce these elaborate administrative remedies [are] exhausted, a claimant [may] seek judicial review, including review of constitutional claims,” id., and “the system for protecting [claimants’] rights is, if anything, considerably more elaborate than the civil service system considered in Bush.” Id. at 425.
In the present context, Congress has not created an alternate remedy or special administrative program affording constitutional protection to aliens, as distinguished from the protection available to ordinary citizens, against injuries caused by the violation of aliens’ constitutional rights by federal agents. Nor can it be said that there is any government program suggesting by its design that Congress has provided what a reasonable legislator would consider to be adequate remedial mechanisms for constitutional violations. Consequently, I believe that Hum-phries’ complaint states a cause of action for money damages under the First, Fifth and Thirteenth Amendments that would entitle him to recover for any injuries that he suffered as a result of the federal agents’ alleged violations of those Amendments.
The IIRIRA does not divest the district court of jurisdiction of any of Humphries’ Bivens causes of action for money damages arising from the alleged violation of his constitutional rights. The Supreme Court has emphatically stated “that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.” Webster v. Doe, 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (citing Johnson v. Robinson, 415 U.S. 361, 373-74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)(“‘[C]lear and convincing’ evidence of congressional intent [is] required by this Court before a statute will be construed to restrict access to judicial review.”)). The Court noted that it had reaffirmed that view in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and declared that “[w]e require this heightened showing in part to avoid the ‘serious constitutional question’ that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.” Webster, 486 U.S. at 603, 108 S.Ct. 2047 (citing Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)).
The government’s brief in Reno v. American-Arab Anti-Discrimination Committee, No. 97-1252, in the Supreme Court concedes that a grave constitutional question would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim. Brief for Petitioners, at 36-37 (citing Webster v. Doe, 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988)). Accordingly, the government also concedes that the respondent aliens’ First Amendment selective enforcement challenges are not permanently foreclosed by the IIRIRA. Rather, it is the government’s position that such claims can be raised if and when a final order of deportation is entered. Id. at 34. Consequently, the IIRIRA certainly does not foreclose Humphries’ Bivens causes of action for money damages based on alleged violations of the First, Fifth and Thirteenth Amendments. Not only has a final order of deportation been entered and carried out removing Humphries to Kenya; his claim does not and could not directly challenge the validity of the removal order or the deportation. Hum-phries’ money damages claim merely seeks compensation for injuries resulting from the alleged constitutional violations.
Accordingly, § 1252(g) of 8 U.S.C. may not be read to deny an alien a judicial forum for a colorable constitutional claim for money damages under Bivens based on the violation of the alien’s constitutional rights by federal agents acting under color of federal law. The IIRIRA is designed to “enable the prompt admission of those who are entitled to be admitted, the prompt exclusion or removal of those who are not so entitled, and [make] the clear distinction between these categories.” Report of the Committee on the Judiciary, House of Representatives on H.R. 2202, Rept. 104-469; 104th Congress at p. 111. Section 1252(g) furthers these goals by removing from courts the jurisdiction of a cause or claim arising from the Attorney General’s commencement or prosecution of removal proceedings and execution of a re *951 moval order until the order has become final. Humphries’ Bivens causes of action for money damages arise directly from alleged violations of the Constitution, not from the statutorily authorized removal proceedings against Humphries initiated by the Attorney General. And the removal order deporting Humphries to Kenya has become final, definitive, and has been carried out. Humphries’ actions for damages based on violations of his constitutional rights are not affected by and can have no effect upon the definitively final removal order or Humphries’ deportation. Nothing in § 1252(g) is persuasive that Congress clearly intended to divest federal courts of jurisdiction of Bivens actions for money damages arising out of the unconstitutional conduct of federal agents acting under color of federal law.
Because Humphries’ claim of equitable relief in the form of an injunction of his removal was rendered moot by the final removal order .and his departure from the United States, there are available no other alternative forms of judicial relief. “For [Hum-phries], as for Bivens, ‘it is damages or nothing.’ ” Davis, 442 U.S. at 245, 99 S.Ct. 2264 (quoting Bivens, 403 U.S. at 410, 91 S.Ct. 1999 (Harlan, J., concurring in judgment)). A different case presenting a viable claim for injunctive or other equitable relief based directly on an alleged constitutional violation may call for different treatment of that particular claim. In the case of an alien subjected to the threat or imposition of unconstitutional custodial detention, perhaps a Bivens action for injunctive relief would not be appropriate because of an available alternative remedy of habeas corpus. The question of the appropriateness of habeas corpus or of equitable relief in the form of an injunction against removal is not in this case, however, and we consequently should intimate no final or definitive view on those issues.
I respectfully disagree with the majority’s position that Humphries’ action for money damages based on the alleged violation of the First Amendment should reach a different fate than his Fifth or Thirteenth Amendment claim. If Humphries can prove that the defendant federal agents’ violations of the First Amendment caused him injury by violating his First Amendment rights, he is entitled to recover money damages from them, unless they are entitled to qualified immunity under the applicable facts and law. Today we should be more aware than ever that:
Our system of jurisprudence rests on the assumption that all individuals, whatever their position in government, are subject to federal law: “No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.” United States v. Lee, 106 U.S. [196], 220, [27 L.Ed. 171, 1 S.Ct. 240][ (1882) ].
Davis, 442 U.S. at 246, 99 S.Ct. 2264 (quoting Butz v. Economou, 438 U.S. at 506, 98 S.Ct. 2894).
I see no reason why the federal official defendants in the present case have a better claim to a jurisdictional defense to a Bivens action for money damages than a president, congressman, cabinet member, or any other federal officer. As Justice Brennan observed in his dissenting opinion in Schweiker, 487 U.S. at 447, 108 S.Ct. 2460:
[I]n order to prevail in any Bivens action, [claimants] must both prove a deliberate abuse of governmental power rather than mere negligence, ... and overcome the defense of qualified immunity. []Indeed, these very requirements are designed to protect Government officials from liability for their “legitimate” actions; the prospect of liability for deliberate violations of known constitutional rights, therefore, will not dissuade well-intentioned civil servants either from accepting such employment or from carrying out the legitimate duties that employment imposes. (Footnote and citations omitted)..
This correct observation applies fully to the protection afforded the government officials in the present case as well.