**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

HERBERT DOUGLAS
MOSCOSO-MORALES,

  Petitioner,

 v.

ALBERTO R. GONZALES, Attorney
General,

  Respondent.

No. 05-9524
(No. A97-187-270)
(Petition for Review)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

---

Herbert Douglas Moscoso-Morales petitions for review of the Board of

Immigration Appeals' (BIA) decision affirming the Immigration Judge's (IJ)

denial of his request for asylum and withholding of removal. The IJ concluded

that petitioner was not eligible for asylum because he had not met his burden of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

establishing past persecution or a well-founded fear of future persecution. This conclusion was based on the IJ's determination that petitioner was not credible with regard to his fear of living in Colombia. The BIA adopted and affirmed the IJ's decision with some additional reasoning. We have jurisdiction to review the BIA's decision under 8 U.S.C. § 1252(a). Because we conclude that the BIA's adverse credibility determination is not supported by substantial evidence, we reverse and remand for further proceedings.

## Background

Petitioner is a native and citizen of Colombia. He was raised in the Mormon Church and spent most of his life in religious activity serving on various committees and teaching. Petitioner married Nancy Elena Pineros-Sanchez in 2000. In January 2001, he was appointed a teacher at La Merced High School in Ibague, which is about 100 miles west of the capitol. In Ibague, he became interested in the political campaign of Juan Felipe Ortiz, who was also a church member. Mr. Ortiz was a member of the national liberal party and a member of the local party called the Colombian Conservatives. Petitioner was quite active in the campaign as the chief of debate and the advisor concerning television spots for the candidate. He also did some campaigning in the northern parts of the city. During this time, petitioner was also involved with an informal group called the Veedors, which is translated as "auditors." This group tried to root out corruption in the local city government and bring it to the public's attention.

Petitioner testified that at the beginning of the school year in 2001, a man approached him and told him that he should be instructing the students that they should become a part of the People's Army. This was a reference to FARC, which is the principal revolutionary group in Colombia and has been responsible for thousands of deaths in that country. Petitioner refused to cooperate with the man and instead publicly denounced FARC during class and in meetings with the parents. He testified that on November 12, 2001, he was approached by two men on motorcycles who blocked his path. They threw him to the ground and threatened him and made him promise not to participate in any more political activity. They told him he had no authorization from them to be involved in political activity.

According to petitioner, after this incident, he received a telephone threat that same day and then for the next few months he and his wife received twelve to fifteen calls that he described as threatening and vulgar. He testified that in many of the calls the caller would describe what petitioner had been doing that day which indicated to petitioner that he was being followed. Petitioner and his wife finally stopped answering their phone and disconnected it. Although his affidavit states that these were threats "against our lives" he testified that actually the threats were against his wife's life only.

Because of these telephone threats, petitioner and his wife decided to take a trip to get away from everything. They attended a Mormon celebration in

Nauvoo, Illinois in June 2002 for a period of two weeks. They returned to Colombia, but decided to move to Bogota to live with petitioner's mother. On September 25, 2002, petitioner received a written death threat that was hand delivered to his mother's house. The letter stated "[w]e know of all your political and informant activities for your Mormon cult" and it gave him twenty-four hours to disappear or he would be "eliminated." Admin. R. at 253. Petitioner bought airline tickets to the United States and he and his wife left the next day. They entered the United States on six-month visitor visas. While they were in the United States, petitioner and his wife learned that Felix Martinez, another member of their political organization, was assassinated. After hearing this news, petitioner applied for asylum and withholding of removal.

<u>Scope of Review</u>

The threshold question for consideration is "whether we review (1) the BIA's affirmance, (2) the IJ's original analysis, or (3) both agency decisions." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1202-03 (10th Cir. 2006). In this case, the BIA issued a single-member brief order. In such a case, the BIA's decision is the final order and "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Id.* We can look to the IJ's decision, however, to provide a more complete explanation of the grounds relied upon by the BIA. *See id.* "This is especially appropriate where the BIA

incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion." *Id.*

Standard of Review

"Although always deferential to agency fact-finding, we must ensure that BIA conclusions are sufficiently supported by the available evidence." *Id.* This court reviews a BIA decision to determine whether the factual findings "are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour v. Ashcroft,* 378 F.3d 1143, 1150 (10th Cir. 2004). Credibility determinations "are subject to the substantial evidence test." *Id.* "Where the BIA's decision relies upon an IJ's initial findings, we must ensure that such determinations are substantially reasonable." *Uanreroro*, 443 F.3d at 1204 (quotation omitted). These credibility determinations will be upheld "so long as the IJ provides specific, cogent reasons for disbelieving the witness' testimony. This standard of review is a deferential one, but we do not blindly accept an IJ's determination that an alien seeking asylum or restriction on removal is not credible." *Elzour*, 378 F.3d at 1152 (quotation and citation omitted).

An adverse credibility determination may be based on inconsistencies in the witness' testimony, lack of sufficient detail, implausibility, or testimonial demeanor. *Id.* at 1152-1153. "An IJ's finding that an applicant's testimony is implausible may not be based upon speculation, conjecture, or unsupported

-5-

personal opinion." *Id.* at 1153. This court is bound by the reasons given by the agency, and may not affirm on other grounds. *Mickeviciute v. INS*, 327 F.3d 1159, 1162-63 (10th Cir. 2003). This court may reverse and remand for further proceedings when the IJ's credibility determination is not adequately supported. *See Chaib v. Ashcroft*, 397 F.3d 1273, 1280 (10th Cir. 2005); *Elzour,* 378 F.3d at 1154.

## Discussion

Petitioner bears the burden of establishing that he is a refugee, and therefore eligible for asylum, by demonstrating that he suffered past persecution or that he has a well-founded fear of future persecution. *See Castaneda v. INS*, 23 F.3d 1576, 1578 (10th Cir. 1994). Petitioner asserts that he has met his burden of demonstrating that he has a well-founded fear of future persecution. The IJ concluded, however, that petitioner had not met his burden because he had not shown a genuine fear of living in Colombia. This determination was based in part on petitioner's decision to travel to the United States for two weeks in the summer of 2002 and then return to Colombia even though he had been subjected to threats before he took the trip. The IJ also doubted petitioner's credibility about the threats because there was an inconsistency in petitioner's testimony about whether both his and his wife's life had been threatened.

The BIA adopted and affirmed the IJ's decision in a brief order. The order stated that it was providing some additions to the IJ's decision and then it went on

to state that the BIA agreed that the discrepancy in the testimony regarding who received the threats and the petitioner's actions with regard to returning voluntarily to Colombia in 2002 supported the IJ's decision. The BIA included an additional paragraph giving further specific information about the inconsistency in the testimony. Because the BIA expressly adopted the IJ's decision, we can look to that decision to provide a more complete explanation for the grounds provided by the BIA. *See Uanreroro*, 443 F.3d at 1204.

We conclude that the IJ did not sufficiently support his credibility findings and that the BIA's decision does not further clarify the credibility issue. This court's

> review is confined to the reasoning given by the IJ [or the BIA], and [the court] will not independently search the record for alternative bases to affirm. If an agency decides a case on a ground believed by an appellate court to be wrong, the case has to be remanded to the agency.

*Elzour*, 378 F.3d at 1150 (quotation and citation omitted).

*Inconsistent Testimony*

Both the IJ and the BIA found significant the inconsistency between petitioner's testimony about the telephone threats he and his wife received and the statement in his affidavit about those threats. In the affidavit, petitioner stated "[a]fter this day the telephone threats and offenses started at different hours of the day, some listed where I had been during the day and with whom I had met, others were only vulgar and others contained threats against our lives."

Admin. R. at 212. During the hearing, petitioner was questioned about these telephone threats:

> Q. . . . [T]hese telephone calls that you received after November of [2001] and before you came to the United States the first time, did they ever threaten you with death?
>
> A. They threatened my wife and me.
>
> Q. With death?
>
> A. The death threats were directed to my wife. I think it was to frighten me.
>
> Q. But not against you?
>
> A. No . . . .
>
> Q. Because your statement stays that some of the threats were vulgar and others were threats against our lives, but now [you're] saying it's only against your wife, is that right?
>
> A. Yes, we are one. I understand that if someone threatens my wife, they threaten me.

*Id.* at 89. Petitioner's testimony very ably explains why he stated in the affidavit that the threats were against "our lives."

Because petitioner testified that he did not receive any death threats against his own life by phone, the BIA noted that this was inconsistent with a notarized statement by someone known to petitioner, Carlos Guzman, which stated that petitioner received death threats by phone between December of 2002 and the start of 2003. The BIA's ruling seems to confuse two periods of threats (the 2001 threats and the 2002-2003 threats) and fails to include a discussion of additional relevant record evidence. The threats discussed in the testimony quoted above occurred when petitioner and his wife were still living in Ibague. The threats referred to in Mr. Guzman's statement occurred after they left Colombia in 2002

and were living in the United States.  When he was asked about Mr. Guzman's statement later in the hearing, Mr. Moscoso-Morales explained that threats continued against him even after he left the country through calls made to the high school where he had worked and to his political party's headquarters. *Id.* at 90.

"Inconsistencies of less than substantial importance for which a plausible explanation is offered cannot form the sole basis for an adverse credibility finding." *Secaida-Rosales v. INS*, 331 F.3d 297, 308 (2d Cir. 2003) (quotation omitted).  This inconsistency identified by the BIA is of less than substantial importance because regardless of whether or not petitioner received death threats by phone, it is undisputed that he received a death threat in writing, which prompted him immediately to flee from Colombia.  This written death threat is not discussed by the BIA in its decision and goes to the heart of petitioner's asylum claim.  Moreover, petitioner offered a plausible explanation for why he stated in the affidavit that the telephone threats were against "our lives."

*Trip to the United States in 2002*

Both the BIA and the IJ also found significant the fact that petitioner and his wife decided voluntarily to return to Colombia after their two-week stay in the United States in June 2002.  The IJ stated that this demonstrated that petitioner and his wife were not afraid to live in Colombia.  Petitioner explained, however, the reasons for his return after this initial visit to the United States.  Before they

left on their trip, petitioner had received one threat in person to stop his political activity and had received threats over the telephone against his wife. Petitioner testified that they did not consider staying in the United States at the time of that trip because they "were under the illusion that [the telephone threats were] just going to be something that would pass." Admin R. at 93-94. Petitioner testified that he did not apply for asylum on that trip because he "thought that everything was going to be fine. [He thought] that the people that were protecting [him] would be able to protect [him]." *Id.* at 90.

Although petitioner thought he could still live safely in Colombia, upon his return from his trip to the United States, petitioner and his wife took the precaution of moving from their town to the capitol city of Bogota. This move, however, did not protect them. Within three months, petitioner received a letter threatening his life if he did not leave within twenty-four hours. *See id.* at 77, 253. Petitioner and his wife took the threat seriously, fled immediately to the United States, and ultimately sought asylum.

The IJ and BIA's reliance on the fact that petitioner and his wife voluntarily returned to Colombia in June 2002 does not consider all of the relevant information. "When making a credibility determination, the IJ is required to consider 'the totality of the circumstances, and *all relevant factors*.'" *Uanreroro*, 443 F.3d at 1210 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). The IJ and BIA's reasoning is incomplete because it fails to consider petitioner's actions

after his return to Colombia: the move to Bogota, the receipt of the written death threat, and the immediate departure for the United States. Although it was appropriate for the BIA to consider petitioner's voluntary return in 2002 as a factor in its credibility determination, it alone does not "rise to the level of 'substantial evidence' to support an adverse decision on [petitioner's] claims for relief." *Uanreroro*, 443 F.3d at 1211.

*Additional Reasons Provided by the IJ*

The IJ stated two other reasons for its adverse credibility decision that were not mentioned by the BIA. These additional reasons, however, do not provide sufficient support for the adverse credibility determination. The IJ stated that he believed that petitioner's conduct showed that he was not afraid to return to his native country. Specifically, he stated that he did not believe that petitioner was a genuine asylum seeker because petitioner did not leave after the allegedly threatening letter was handed to him. This statement is in direct contradiction to record evidence. Petitioner testified that the same day he received the written death threat letter, he purchased the plane tickets to come to the United States and they left the next day. Admin. R. at 77-78.

Second, the IJ found it hard to believe that petitioner did not apply for asylum immediately after coming to the United States, but instead waited until someone in his organization was killed. This finding is improperly based on unsupported personal opinion. *See Elzour*, 378 F.3d at 1153. The fact that

petitioner waited to apply for asylum until he learned of Felix Martinez's murder does not undermine his claim that he has a fear of future persecution; instead, it supports it. Petitioner testified in his affidavit and at the hearing that he did not intend to file for asylum when he and his wife initially fled the country. Admin. R. at 78; 213. He intended "[j]ust to leave the scene for a bit to calm things down." *Id.* at 78. But once another person from his political organization was assassinated, it became clear that there could be no safety for them in Colombia. *Id.* at 78-80. The written death threat combined with the actual murder of one of their colleagues provided petitioner with a necessary piece of objective evidence to support his claim for a well-founded fear of future persecution. *See Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (requiring showing of objective basis for fear of future persecution by "credible, direct, and specific evidence"). The IJ failed to address this relevant evidence.

## Conclusion

Because "[t]he reasons presented by the IJ and repeated in part by the BIA neither individually nor collectively constitute substantial evidence to support [the agency's] final determination," *Uanreroro*, 443 F.3d at 1211, we REVERSE

the BIA's final order and REMAND for further proceedings.

Entered for the Court


Mary Beck Briscoe
Circuit Judge